## THE BELLE.

(Circuit Court of Appeals, Second Circuit. April 4, 1899.)

### No. 125.

TUG AND TOW—LIABILITY OF TUG FOR INJURY TO TOW.

Where the presence of a number of vessels, moored alongside of each other in Harlem river, made it necessary for tugs with a tow, in passing down, to keep well to the opposite side of the channel, but they kept within the limits where the water was of sufficient depth, as shown by the government charts, they cannot be held liable for an injury to the tow caused by her striking a sunken rock, which was not shown on the charts or known to navigators.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the district court, Southern district of New York, dismissing the libel. 89 Fed. 879. The suit was brought to recover damages alleged to have been caused by the said tugs in negligently towing the libelant's barge, Joseph H. Rose, upon a rock in the Harlem river, on September 4, 1897.

George B. Adams, for appellant.

Peter Alexander, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. The barge was being towed from the entrance of Spuyten Duyvil creek, down the Harlem river, bound for 138th street. She drew 8½ feet, the rock was about 5½ feet under water at low tide, and the ordinary rise and fall of the tide was about 5 feet. The tide had been flood for about an hour and a half in the Hudson river when the tow started. The flood tide flows from the Hudson river down the Harlem. There seems to be no dispute, upon the evidence, that the existence of the rock was not known to navigators. Upon the charts of soundings made by the government, incident to the improvements being made on the Harlem river, its presence was not indicated. These improvements had effected changes in the channel, but the dredging had not been continued quite as far down the river. It stopped about 15 feet short of the rock. As the tow approached Morris' dock, it was found that a number of boats were made fast there, alongside of each other, so as to occupy 150 feet of the channel,—a most reprehensible practice in such a restricted water way. In order to pass it was necessary to keep the tow well over to the westward.

There is a sharp conflict of evidence as to the precise location of the rock. Claimant's witnesses place it nearly opposite Morris' Dock. The libelant's witness, Taylor, a civil engineer of 20 years' experience, and who had been employed for 11 years by the government as engineer in charge of the work on Harlem river, places it a little below the line of the dock, and further to the westward. He located the rock by actual survey with a sextant, using the triangulation stations already fixed as part of the survey work done by the government

93 F.—53

engineers. We accept his location as the correct one. It appears, however, from the very charts of soundings of 1896 which he produced, that the rock lay between the 9-foot and the 12-foot contour lines; and, since its presence there was then unknown, we cannot find the tugs negligent for taking the tow where, except for this unknown obstruction, there was sufficient depth of water, even though they were navigating far over towards the westerly side of the 9-foot water way,—a maneuver rendered necessary by the obstruction of half, or more than half, of the channel by the vessels at Morris' dock.

The decree of the district court is affirmed, with costs.